UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

BRUNEL MAXINEAU,

                            Plaintiff,

          -against-

THE CITY OF NEW YORK.

                           Defendant.

----------------------------------------------------------------x

MEMORANDUM AND ORDER

11-CV-02657-ENV-LB

VITALIANO, D.J.

On April 11, 2011, *pro se* plaintiff Brunel Maxineau brought this action against the City of New York ("the City") asserting causes of action arising under 42 U.S.C. § 1983. Maxineau seeks damages for what he claims was an unlawful seizure of his vehicle, which the City confiscated for use as evidence in a criminal case against Maxineau. Currently before the Court is the City's motion to dismiss under Federal Rule 12(b)(1) for lack of subject matter jurisdiction. The City contends that Maxineau lacks standing to assert his claims. For the reasons that follow, the City's motion is granted in part and denied in part.

## Background

The following facts are drawn from the pleadings, briefs, and attached exhibits.[1]

---

[1] "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

1

On February 22, 2008, officers of the New York City Police Department ("NYPD") arrested Maxineau on charges, among others, of the kidnapping and rape of a 16-year-old girl. (*See* Def.'s Mem. (Dkt. No. 24) at 2; MacFarlane Decl. (Dkt. No. 25), Exh. A). At the time of the arrest, Maxineau's vehicle—a 2007 Nissan Frontier ("the Nissan")—was undergoing repair work at City Auto Body of Valley Stream ("the shop"). (*See* Compl. (Dkt. No. 1) ¶ 2; Def.'s Mem. at 2). Employees at the shop surrendered the Nissan to NYPD officers on or about the same date as the arrest; ostensibly, the officers sought possession of the vehicle for use as evidence in the criminal prosecution of plaintiff. (*See* Compl. ¶ 2; Def.'s Mem. at 2; MacFarlane Decl., Exh. E-F). Maxineau now contends that the City violated his constitutional rights by seizing the Nissan without his consent or a warrant, and without having followed the legally prescribed procedures for seizing and returning private property. (*See* Compl. at ¶¶ 2, 6, 9, 11-12).

Maxineau purchased the Nissan on September 27, 2007, when he entered into a retail installment contract ("the contract") with Sovereign Bank ("Sovereign") to finance the $22,152 payment price of the vehicle. (*See* Def.'s Mem. at 2; MacFarlane Decl., Exh. B). Under the contract, Maxineau was required to make monthly payments to Sovereign, which retained a lien on the vehicle as well as a right to repossess it under various specified circumstances, including its seizure "by a third party . . . because of the Vehicle's alleged or actual involvement in actual or alleged criminal or unlawful activity," or that "[a]ny amount owing under this Contract or any other amount [the purchaser] owe[s] [Sovereign] now or in the future is not paid by the day it becomes due." (Def.'s Mem. at 2; MacFarlane Decl., Exh. B at Right to Demand Payment in Full Events No. 1, 9; Exh. C). In spite of Sovereign's lien, Maxineau had acquired property rights in the Nissan on the day he purchased it.

There was nothing remarkable about Maxineau's car deal. According to the relevant

2

account balance records, he made a $2000 down payment on November 7, 2007 as well as monthly payments of $400 from November 2007 through February 2008. (*See* MacFarlane Decl., Exh. G). He made no payments following his arrest on February 22, 2008. (*See id.*). The record does not speak as to whether he remained at liberty or was detained during that period. After pleading guilty to first-degree rape, a judgment of conviction was entered against Maxineau on October 5, 2009. He is currently serving out a prison sentence at Coxsackie Correctional Facility in Coxsackie, New York. (*See* Def.'s Mem at 3 (citing *People v Maxineau*, 78 A.D.3d 732, 909 N.Y.S.2d 659 (2d Dep't 2010); Compl. ¶ 4).

On December 10, 2009, Sovereign's holding company, Santander, filed a notice of repossession for the Nissan with the Indiana Bureau of Motor Vehicles and acquired title on December 17, 2009. (MacFarlane Decl., Exhs. H-I). The record is bare as to the specific event of default on which Santander moved to repossess. The City released the Nissan to Santander on or about February 23, 2010. (*Id.*, Exh. J). That same day or soon thereafter, a company identified as Drive Financial Services mailed Maxineau a notice informing him of the repossession and explaining that, within ten days, he could reinstate the contract by paying a total of $10,854.56, or redeem full ownership rights by paying $23,647.67. (*Id.*, Exh. K). Maxineau appears not to have either reinstated the contract or redeemed full ownership rights. (*See* Compl. at ¶ 8 (stating that plaintiff "believes that his chattal [sic] is un-redeemable")).

Plaintiff filed this *pro se* action on April 11, 2011 in the United States District Court for the Southern District of New York naming as defendants the City and the shop. (*See* Compl. ¶¶ 1-7). The complaint asserted that "[t]his action arises under the Eight and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988 and under

3

New York State common law."[2] It also references the Fifth Amendment and (implicitly through accusations of NYPD's warrantless seizure of the Nissan) the Fourth Amendment. (*Id.* ¶¶ 2, 8, 11). The case was transferred to this Court on May 31, 2011 (*see* Transfer Order (Dkt. No. 4)). The shop was dismissed from the case on July 15, 2011; as a private party, it was not a proper defendant to a § 1983 action. (*See* Mem. and Order (Dkt. No. 8)).

## Standard of Review

*Pro se* pleadings such as Maxineau's complaint are held to less stringent standards than those drafted by attorneys, and the Court must read *pro se* complaints liberally and interpret them to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). If a liberal reading of the pleadings indicates that a valid claim might be stated, the court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). The Court must be particularly solicitous when reviewing a complaint that alleges civil rights violations, as Maxineau's does. *See Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008).

Nonetheless, a plaintiff must show that he has standing to sue on his claims for a federal court to have subject matter jurisdiction over them. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "'[T]he irreducible constitutional minimum of standing' derives from Article III, Section 2 of the U.S. Constitution, which limits federal judicial power to 'cases' and 'controversies.'" *Natural Res. Def. Council, Inc. v. U.S. Food and Drug Admin*, 710 F.3d 71, 79

---

[2] Maxineau does not specify what causes of action under New York State common law he wishes to assert. In any event, there is no record that Maxineau submitted a N.Y. Gen. Mun. Law § 50-e notice, which he must have done within 90 days to bring any state law claims against the City in federal court. *See Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Hence, any claims against the City based on New York law are procedurally barred.

4

(2d Cir. 2013) (quoting U.S. Const. art. III, § 2 and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The standing analysis is contextual, and must comply with the "manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Additionally, because this case is at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," *id.*, and the Court may look outside the pleadings to determine whether standing exists. *Morrison*, 547 F.3d at 170. Additionally, since defendant is moving to dismiss, the facts alleged by plaintiff in his pleadings must be taken as true. *Lujan*, 504 U.S. at 561.

As taught in *Lujan*, Article III standing consists of three elements. First, plaintiff must have suffered an "injury in fact"—that is, an invasion of a legally protected interest which is concrete and particularized, as well as an injury that is "actual or imminent" rather than "conjectural or hypothetical." *Id.* at 560 (internal quotations omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not [be] the result of independent action of some third party not before the court." *Id.* (internal quotations and ellipses omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotations omitted).

## Discussion

### A. 42 U.S.C. § 1988

As a preliminary matter, the Court observes *sua sponte* that 42 U.S.C. § 1988 does not establish a separate cause of action for an alleged violation of a plaintiff's civil rights, but merely provides a means for a prevailing party to recover reasonable attorney's fees in a § 1983 action.

*See* 42 U.S.C. § 1988(b). In any event, the Supreme Court has instructed that this statute does not apply to *pro se* litigants, even when they prevail on the merits of their § 1983 claim. *See Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991). Accordingly, it provides Maxineau no basis for jurisdiction or relief in this case.

### B. 42 U.S.C. § 1983

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Courts have interpreted the word "person" in this context to include municipalities such as the City if the plaintiff can show "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)). *See also Roe*, 542 F.3d at 36 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

Under *Monell*, an actionable municipal policy or custom exists in the following circumstances:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Bliven v. Hunt*, 478 F.Supp.2d 332, 336-37 (E.D.N.Y. 2007) (citing *Moray v. City of Yonkers*,

924 F.Supp. 8, 12 (S.D.N.Y. 1996)). Notably, if a plaintiff seeks to show municipal policy by referring to only a single act, that act must have been committed by a city official "responsible for establishing final policy with respect to the subject matter in question," and must represent a deliberate and considered choice among competing alternatives. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986). If the plaintiff challenges what he claims is an unofficial custom or practice of the city, he must show that the practice "so widespread as to have the force of law." *Id.* (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 404). The custom "need not [have] receive[d] formal approval by the appropriate decision-maker . . . [but] plaintiff must prove . . . that [it] is permanent." *Davis v. City of New York*, 228 F.Supp.2d 327, 337 (S.D.N.Y. 2002) (internal citations omitted).

Consequently, if Maxineau's lawsuit is to bear fruit, it must take root in the fertile soil of § 1983, *Monell*, and its progeny. The Court will consider each seed that plaintiff might arguably sow.

### i. Fourth Amendment

In several places throughout his complaint, Maxineau asserts that NYPD seized the Nissan from him "absent [his] consent . . . or a warrant." (Compl. ¶ 2). The City objects to any Fourth Amendment claim alleged to arise from NYPD's taking possession of the Nissan at the repair shop. It argues that "plaintiff's vehicle was not seized—the body shop plaintiff left his vehicle with <u>released</u> the vehicle to NYPD." (Def.'s Reply (Dkt. No. 26) at 2) (emphasis in original). Given voluntary surrender of the car by the shop, the City presses the view that it did not cause any legally cognizable injury to Maxineau supporting a Fourth Amendment claim.

The veil of voluntary surrender shielding the City is immodestly thin. The Supreme Court has instructed that a seizure of property occurs whenever a government entity "meaningful[ly]

7

interfere[s] with an individual's possessory interests in that property." *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992). When, for law enforcement purposes, police officers acquire private property from a third party to whom it has been entrusted, they have meaningfully interfered with the primary party's possessory interest in the property. *See U.S. v. Jacobsen*, 466 U.S. 109, 120, 120 n.18 (1984), (DEA agents that confiscated parcels from Federal Express "seized" the property by "exert[ing] dominion and control over the package for their own purposes");*Cardwell v. Lewis*, 417 U.S. 583 (1974) (police's removal of a car from a commercial parking lot and subsequent impoundment was a "seizure" under the Fourth Amendment). Here, it is of no moment that the shop "released" the Nissan to NYPD; the police exerted dominion and control over the vehicle and interfered with Maxineau's possessory right to it. Plainly, the officers "seized" the vehicle within the meaning of that term as used in the Fourth Amendment.[3]

However, even if Maxineau has articulated a cognizable claim arising out of NYPD's seizure of his Nissan from the shop, he has not demonstrated a causal chain linking the claimed loss to the City. Assuming, *arguendo*, that the officers' warrantless seizure of the vehicle was unreasonable, Maxineau has pleaded no facts whatsoever suggesting that their improper actions were the result of any City policy, either official or unofficial, or that the City was grossly negligent in its training and supervising its officers with regard to property seizures. Nor has he pleaded facts indicating that high-ranking policymakers were responsible in any way for the

---

[3] While the "third party consent" doctrine permits a third party in some circumstances to consent to a search or seizure on behalf of the primary party, that doctrine relies upon the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the [search or seizure] and that the others have assumed [that] risk." *U.S. v. Matlock*, 415 U.S. 164, 171 n.7 (1974). The shop did not share with Maxineau "joint access or control" over the Nissan "for most purposes." As a result, this doctrine is inapplicable.

seizure. There is simply no basis under *Monell* to link the City to the allegedly improper seizure of the vehicle. Accordingly, there is no causation under *Lujan*'s second prong, and Maxineau lacks standing to pursue a Fourth Amendment claim under § 1983.

### ii. Fifth Amendment

The Fifth Amendment provides an assortment of protections against government intrusions in both a civil and criminal context. Maxineau does not specify which aspects of the Fifth Amendment he seeks to assert in his § 1983 claim; with solicitude, the Court can identify only two that might have any relevance to his stated grievances: the prohibition of "depriv[ations] of life, liberty, or property, without due process of law," and the proscription against government "takings" of "private property . . . for public use, without just compensation." U.S. Const. amend. V. However, neither of these protections applies to Maxineau's claims, and he lacks standing to assert them under § 1983.

First, "[t]he Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials." *Mitchell v. Home*, 377 F.Supp.2d 361, 372 (S.D.N.Y. 2005) (citing *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002)). Consequently, with no federal involvement in this matter, Maxineau has asserted no cognizable wrong under the Fifth Amendment's due process clause; all of his complaints are directed at officials operating with state authority. The takings clause, on the other hand, *does* apply to state actors through the Fourteenth Amendment. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 611 (2001).[4] However the case law makes clear that a government's seizure of private property under a power other than

---

[4] Similarly, the protections provided by the Fourth and Eight Amendments are incorporated into the Fourteenth Amendment's Due Process Clause and thus apply to state actors. *See Bailey v. U.S.*, 133 S.Ct. 1031, 1038 (2013); *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).

9

that of eminent domain does not require compensation, nor does it implicate the Fifth Amendment. *See, e.g., Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); *Acadia Technology, Inc. v. U.S.*, 458 F.3d 1327, 1331 (Fed. Cir. 2006) (government seizure of property as evidence in a criminal proceeding or as the suspected instrumentality in a crime does not constitute a taking for Fifth Amendment purposes); *AmeriSource Corp. v. U.S.*, 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause.").

Certainly, it is beyond dispute that the seizure of the Nissan by NYPD did not result from the exercise the power of eminent domain by the City. Rather, the officers impounded the vehicle for use as evidence in the criminal case against its owner. It is equally clear that the seizure of property for use as evidence in a criminal matter is a valid exercise of a state's police power. *See Ford Motor Credit Co. v. N.Y.C. Police Dept.*, 503 F.3d 186, 188 (2d Cir. 2007) ("If the City also wishes to retain the vehicle as 'arrest evidence' or 'trial evidence' pending conclusion of a criminal proceeding, it may do so.") (internal citations omitted). *See also id.* ("[I]t is clear that the police power encompasses the government's ability to seize and retain property to be used as evidence in a criminal prosecution.") (citing *Warden v. Hayden*, 387 U.S. 294, 309-10 (1967)). Even if Maxineau alleges that NYPD failed to provide him with adequate post-deprivation process following seizure of his vehicle, there is no doubt that the seizure itself was an exercise of the City's power to seize probative evidence for use in criminal proceedings. As such, putting aside the Fifth Amendment's inapplicability to nonfederal actions, there was no taking, nor was there any pre-impoundment process required before accepting the repair shop's

10

surrender of the vehicle. Maxineau therefore lacks standing to assert a Fifth Amendment claim under § 1983.[5]

### *iii. Eighth Amendment*

The Eighth Amendment mandates that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VII. Maxineau indicates in his complaint that the City violated the Eighth Amendment by seizing the Nissan without gaining his consent and/or providing him with notice and other procedural protections. To implicate the Eighth Amendment, the challenged action must have been taken for the purpose of imposing a punishment. *See, e.g., Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (double celling of prisoners "simply [is] not punishment[]," and, as a result, does not run afoul of the Eighth Amendment); *Santelises v. Immigration and Naturalization Serv.*, 491 F.2d 1254, 1255-56 (2d Cir. 1974) ("It is settled that deportation, being a civil procedure, is not punishment and the cruel and unusual punishment clause of the Eighth Amendment accordingly is not applicable."); *Ford Motor Credit Co. v. N.Y.C. Police Dept.*, 394 F.Supp.2d 600, 618 (S.D.N.Y. 2005) ("Because plaintiff has failed to set forth any evidence suggesting that the 10% deduction is punitive in nature, it is not susceptible to Eighth Amendment analysis.").

There are no facts in the record suggesting—and Maxineau certainly does not contend—that the NYPD officers confiscated the Nissan in order to punish him. Indeed, there seems to be no substantial dispute that the vehicle was removed from the shop as evidence to be used in connection with the criminal case against Maxineau. Such a purpose is hardly punitive in nature.

---

[5] The due process clause of the Fourteenth Amendment is treated separately at part IV, *infra*. The issue of *post*-deprivation process is discussed in that section. Some courts have held that the Fifth Amendment does apply in such a context, even to a state-level official's activities. *See, e.g., McClendon v. Rosetti*, 460 F.2d 111, 116 (2d Cir. 1972). Substantively, the analyses are the same.

11

With no showing of punitive intent on the part of a law enforcement official, there is no Eighth Amendment injury. Nor, then, is there standing to assert and Eighth Amendment claim under § 1983.

### iv. *Fourteenth Amendment*

Maxineau also brings a Fourteenth Amendment claim against the City. The amendment prohibits "State[s] . . . [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. VII. Maxineau charges that NYPD failed to provide him with proper notice of the seizure of the Nissan, offered him no information "about where and how to retrieve" the vehicle, and failed to comply with or give notice of other legally required "proceedings." (Compl. ¶¶ 5-7; Pl.'s Opp. Mem. (Dkt. No. 22) at 1). He further contends that the City's failure represents a decades-long pattern of "routine and systematic deprivation of arrested defendants/plaintiffs [sic] property without Notice or commencement of proceedings allowing lawful forfeiture." (Compl. ¶ 8 (citing *McClendon v. Rosetti*, 369 F.Supp. 1391 (S.D.N.Y. 1974); *see also* Compl. ¶ 2 (referring to the "oft-recurring pattern of deprivation of chattel by the City of New York absent Notice for the return of the same")). Maxineau attributes this "routine" practice to the City, which "promulgates and implements policies, including those with respect to giving Notice for the return of property seized as a resort of arrest incident," and "is responsible for the appointment, training, supervision, and conduct of its personnel" with regard to these actions. (Compl. ¶ 5). In sum, while his pleadings are not entirely clear on this point, plaintiff does indicate that he seeks as relief a measure of damages equaling $23,647.67, the redemption value of the Nissan demanded by Sovereign (via Drive Financial Services) following its repossession of the vehicle from the City. (*Id.* ¶ 13).

The City concedes that "plaintiff was arguably entitled to . . . notice and a hearing

regarding the Nissan's continued seizure," (Def.'s Mem. at 5 (citing *Ezagui v. N.Y.C.*, 726 F. Supp. 2d 275, 281 (S.D.N.Y. 2010))), but claims that Maxineau lacks standing to assert a Fourteenth Amendment claim because "he had no right in the Nissan as of the moment it was converted into arrest evidence." (Def.'s Mem. at 5). The City cites the clause in Maxineau's contract with Sovereign that granted the bank the right to repossess the Nissan in the event that it was seized as evidence in an alleged criminal activity. (*Id.*) The City submits that, "following the seizure of the Nissan, Sovereign's interest in the Nissan extinguished any interest plaintiff might have had in it. To the extent process was due upon seizure, it was due to Sovereign." (*Id.*). The City further asserts that, with regard to the $23,647.67 redemption price, he "cannot demonstrate that the City's failure to provide [him] with notice or a hearing regarding the Nissan's seizure and retention discharged his financial obligations to Sovereign. . . . Plaintiff's loss of title is a direct result of plaintiff's failure to make payments on his car loan." (*Id.* at 6).

The City is correct that Sovereign's repossession of the Nissan was not the City's doing. Maxineau's obligation to pay Sovereign monthly installments on the vehicle is entirely unrelated to the City's seizure of it. Regardless of whether he was given proper notice, hearing rights, or other procedural protections as to any interference by the City with his rights in the Nissan, Maxineau was still required to honor the contract between Sovereign and himself; the fact that he no longer had possession of the automobile during the time it was in police or prosecutors' possession had no bearing on his installment payment obligations. Indeed, he needed no notice from the City of his obligation to make these payments. He was neither entitled to such notice, nor does he allege any fact to suggest that the City hindered his ability in any way to arrange for these payments to be made.

Although Maxineau asserts that "[his] family could have made payments or arrangement

13

to take possess [sic] of plaintiff [sic] properties if only Plaintiff were informed or received any Notice his properties," (Pl.'s Opp. Mem. at 1), this jumble of grievances merely underscores (but does not repair) the chink in his armor. Again, Maxineau lost rights in the Nissan because he failed to pay for it. He makes no showing that the City prevented him or anyone designated by him from doing so. Maxineau cannot show a causal link between the City's actions, on the one hand, and, on the other hand, either his missed car payments or his failure to reinstate the financing agreement or outright redeem the vehicle when those opportunities were offered to him. Accordingly, he lacks standing to seek damages related to the repossession of the Nissan by Sovereign, or more precisely, Santander, its parent.[6]

There is, however, a chink in the City's armor, too. The City founds its argument on the proposition that Maxineau lost all possessory right to the Nissan once it was seized as evidence in the criminal case against him. This is incorrect. First, the contract does *not* state that vehicle title automatically reverts to Sovereign in the event of the car's seizure in connection with a criminal proceeding. Rather, the clause merely permits Sovereign to "require that the entire balance of [the purchaser's] loan be paid at once, without prior notice or demand," in the event of its seizure by a third-party on account of its actual or suspected use in criminal activity. (MacFarlane Decl., Exh. B at 2). The City is therefore wrong to contend that Maxineau automatically lost all possessory interest in the Nissan at the moment NYPD confiscated the vehicle from the shop. As the record demonstrates, Sovereign did not seek to repossess the vehicle until December 10, 2009, and did not acquire title until December 17 of that year, approximately 22 months after NYPD's seizure of the vehicle. (MacFarlane Decl., Exhs. H-I).

But even if title to the Nissan *had* reverted directly to Sovereign upon seizure by NYPD,

---

[6] For the ease of factual discussion, the Court will refer only to Sovereign and not Santander

Maxineau would still have retained a property interest in the vehicle, if not contractually, at least for due process purposes. The due process protection afforded by the Fourteenth Amendment safeguards not only the rights of undisputed owners, but also the rights of those with "any significant property interest." *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) (holding that, for the purposes of the Fourteenth Amendment, plaintiffs had a property interest in household goods bought under an installment sales contract, even though they lacked title to the goods). The Second Circuit has held that a plaintiff who has purchased a vehicle through an installment plan may retain a property right in the vehicle if he has made substantial payments on the agreement. *See, e.g., Alexandre v. Cortes*, 140 F.3d 406, 411 (2d Cir. 1998) (holding that a plaintiff who lacked title to a Porsche nonetheless had a property interest in it, having paid approximately $2,100 of a $3,400 loan); *Barrett v. Harwood*, 189 F.3d 297, 301 (2d Cir.1999) (plaintiffs who had paid off approximately $5-6000 of an $11,000 loan retained a property interest in a truck); *see also Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (reversing district court and citing *Fuentes*, *Alexandre*, and *Barrett* in holding that a lack of title ownership does not necessarily defeat a plaintiff's property interest in a vehicle).

At the time the Nissan was seized by NYPD, Maxineau had already made a down payment of $2,000 on it and had made four monthly installment payments of $400—a total of $3,600. (Macfarlane Decl. Ex. G). While it only amounts to some 16% of the vehicle's $22,152 purchase price, as an absolute value, $3,600 is a significant investment, and exceeds the $2,100 the plaintiff in *Alexandre* had paid on his Porsche. Furthermore, even after Sovereign reacquired title to the Nissan, Maxineau received notice from Drive Financial Services that, by paying certain specified fees, he could either reinstate the contract or reacquire full title to the vehicle. (MacFarlane Decl., Exhs. K). One of the factors the *Alexndre* court noted in its decision was that

"[t]he agreement also appears to have afforded *Alexandre* the right to redeem the car if it was repossessed." 140 F.3d at 410. In light of this record, the Court concludes on this record that Maxineau had enough equity in the Nissan to have a property interest in the vehicle under the Fourteenth Amendment.

Assuming the truth of his claim that he did not receive notice of NYPD's seizure of the vehicle, Maxineau has articulated a cognizable injury for the purposes of standing. In *Krimstock v. Kelly (Krimstock I)*, 306 F.3d 40, 68-70 (2d Cir. 2002), the Second Circuit held that due process requires "that claimants be given a prompt post-seizure retention hearing, with adequate notice, for motor vehicles seized as instrumentalities of crime pursuant to N.Y.C.Code § 14–140(b)," such that claimants have "opportunity to test the probable validity of the City's deprivation of their vehicles *pendente lite*, including probable cause for the initial warrantless seizure." The court subsequently ruled that, in the case of a vehicle seized as arrest evidence only, where the government does not seek its forfeiture as an instrumentality in a crime, due process requires "review by a neutral fact-finder of a prosecutor's decision to retain a vehicle as potential evidence." *Krimstock v. Kelly (Krimstock II)*, 464 F.3d 246, 249 (2d Cir. 2006).

On remand, the district court spelled out specific procedures that are required after police seize an automobile for use as trial evidence (but not with an eye toward forfeiture as an instrumentality of a crime). In these circumstances, the prosecutor may approach *ex parte* a judge of the court where the criminal matter is pending for a retention. *Krimstock v. Kelly (Krimstock III)*, 506 F.Supp.2d 249, 254 (S.D.N.Y. 2007). The prosecutor "must affirm that there are reasons for the retention, what they are, and that they relate to the contested issue in the underlying criminal proceeding," and "must affirm that no other means besides impoundment . . . will suffice to preserve the evidentiary value of the vehicle." *Id.* Claimants may then demand a copy

of the order and may, within 30 days of service, request a hearing[7] "wherein they may move to vacate or amend the retention order via a challenge to the legitimacy or necessity of the continued retention of the vehicle as evidence." *Id.* at 256. If the judge vacates the retention order, law enforcement must release the vehicle within 30 days "unless continued impoundment is otherwise authorized by law." *Id.*

As best deciphered from the record here, NYPD apparently seized the Nissan as arrest evidence only, not as an instrumentality of a crime. Although Maxineau allegedly used the vehicle in furtherance of a crime to which he later pleaded guilty, nothing in the record indicates that NYPD sought forfeiture of the vehicle as criminal instrumentality; on the contrary, it eventually released the vehicle to Sovereign. Yet Maxineau claims—and the City does not dispute—he never received proper notice of the seizure or opportunity for pre-trial hearing before a neutral factfinder to challenge the prosecutor's decision to retain the vehicle as arrest evidence. Nor is any record provided that the prosecutors in his cause sought a retention order *ex parte* from a judge after providing the required affirmations. Under the *Krimstock* line of cases, due process entitles Maxineau to these safeguards, and he has stated a proper injury under the Fourteenth Amendment.

A separate line of cases further describes the procedural injury that Maxineau claims to have suffered. In 1972, the Second Circuit held that the ordinance governing the return of property seized as evidence, N.Y. Admin. Code § 14-140, was "unconstitutional . . . as violative

---

[7] This hearing would not be a full-dress adversarial hearing," with the "full panoply of adversary safeguards," i.e., "counsel, confrontation, cross-examination, and compulsory process for witnesses." *Krimstock III*, 506 F.Supp.2d at 256 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)). What is overridingly significant, though, is that the Fourteenth Amendment affords claimants at least "some opportunity to be heard" after their car is impounded as arrest evidence, hence the court's ruling that claimants may request a hearing to challenge the retention order within 30 days after service of the retention order on the claimant. *Krimstock III*, 506 F.Supp.2d at 256.

17

of the due process clauses of the fifth and fourteenth amendments." *See McClendon,* 460 F.2d at 116. Subsequent litigation would bring harmony and clarity to the field. Judge Morris Lasker entered an order in a case pending before him that provided a detailed prescription of procedures governing the seizure and return of non-contraband property in connection with an arrest ("the Lasker Order"). *See Butler v. Castro,* 896 F.2d 698, 700-02 (2d Cir. 1990) (describing the Lasker Order). Among other things, the Lasker Order requires the City to provide potential claimants (including arrestees) with a voucher notifying them of the seized property and methods for eventual recovery. *See id.* at 701 n.1. Consequently, since Maxineau has alleged that he received no such notice or voucher, and since the City does not dispute its failure to do so, plaintiff has therefore properly alleged an injury for standing purposes.

What remains of the City's challenge to jurisdiction centers on plaintiff's obligation to state a causal connection between this and an identifiable act or omission by the City itself. That is, to establish standing, Maxineau must satisfy the requirements of *Monell* and demonstrate that his injury resulted from an official policy, practice, or custom of the City. He has done so.

*McClendon* held that the City lacked adequate policies to ensure due process was afforded to those whose property was confiscated for law enforcement purposes; the Lakser Order sought to rectify this City-wide failure. *Butler* later held that the City had neglected to implement the procedures specified in the Lasker Order, in contravention of *McClendon,* and subsequent cases made clear that the City's ongoing failure to amend its administrative code per the Lasker Order opened the door for *Monell* claims. *See, e.g., Frith v. City of New York,* No. 07–CV–5899 (JSR)(DF), 2011 WL 3477083, at *5 (S.D.N.Y. July 7, 2011), *report and recommendation adopted,* 2011 WL 3478141 (S.D.N.Y. Aug. 8, 2011); *Palacio v. NYC,* 489 F.Supp.2d 335, 340-42 (S.D.N.Y. 2007). Because Maxineau has alleged an injury that flows

from a plausibly pleaded unconstitutional policy or practice by the City, he has shown causation for standing purposes.

Finally, Maxineau satisfies the test for redressability. Because he alleges constitutional violations, a successful outcome in litigation would entitled him to, at the very least, nominal damages. *See, e.g., Robinson v. Cattaraugus County*, 147 F.3d 153, 162 (2d Cir. 1998) ("If a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages, the plaintiff is entitled to an award of at least nominal damages as a matter of law."). This is sufficient availability of redress for the purposes of Article III standing. *See, e.g., Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998) (plaintiff had standing to sue under § 1983 due to the possibility of nominal damages); *Suss v. Am. Soc. for Prevention of Cruelty to Animals*, 823 F.Supp. 181, 191 (S.D.N.Y. 1993) (prospect of recovering nominal damages was "sufficient to support standing of the plaintiff to sue in this case even if significant amounts cannot be recovered"). Accordingly, because he has shown injury, causation, and redressability, Maxineau has standing to assert his 14th Amendment claim under § 1983. The City's motion to dismiss this count is denied.

## **Conclusion**

For the foregoing reasons, Maxineau lacks standing to pursue a § 1988 claim, as well as § 1983 claims arising under the Fourth, Fifth, and Eighth Amendments. The City's motion to dismiss these claims for lack of standing is granted. Maxineau has standing to assert a § 1983 claim against the City under the Fourteenth Amendment, but may not recover damages based on the repossession of his vehicle by Sovereign. The City's motion to dismiss this count is denied except with regard to damages based on repossession of the Nissan by Sovereign.

The parties are directed to contact Magistrate Judge Lois Bloom to arrange for the swift

19

completion of discovery and the resolution of other issues relating to the pretrial management of this case.

So ordered.

s/ ENV
---
ERIC N. VITALIANO
United States District Judge

Dated: Brooklyn, New York
       June 6, 2013